# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) STEPHEN SALLEE and<br>2) ANNE SALLEE,<br>individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>vs.<br><br>1) DOLLAR THRIFTY AUTOMOTIVE GROUP, INC. (d/b/a DOLLAR RENT A CAR),<br>2) DOLLAR RENT A CAR, INC., and<br>3) DTG OPERATIONS, INC.,<br>                    Defendants. | Case No. 14-cv-250-CVE-PJC<br><br>**CLASS-ACTION COMPLAINT**<br><br>(Jury trial demanded) |

415365.1

Plaintiffs Stephen Sallee and Anne Sallee, ("Plaintiffs"), individually and on behalf of all others similarly situated, for their Class Action Complaint against Defendants Dollar Thrifty Automotive Group, Inc. (d/b/a Dollar Rent A Car); Dollar Rent A Car, Inc.; DTG Operations, Inc. (together "Dollar" or the "Company"), by and through their undersigned attorneys, allege upon personal knowledge as to themselves and their acts and upon information and belief and the investigation of counsel as to all other matters as follows:

## <u>NATURE  OF THE CASE</u>

1.      Plaintiffs bring this case on behalf of renters of vehicles from Dollar Thrifty Automotive Group, Inc. (d/b/a Dollar Rent A Car); Dollar Rent A Car, Inc.; and DTG Operations, Inc. in connection with Dollar's misrepresentation of "administrative fees" in connection with its rental vehicles.

2.      Since at least 2008, Dollar has charged its customers who travel on toll roads and use electronic toll collection ("ETC"), service, $15 or $25 per toll in addition to the cost of tolls, describing these $15 or $25 charges as an "administrative fee" in the materials comprising Dollar's standardized rental contracts.

3.      But the administrative cost of Dollar's ETC is only a fraction of these $15 or $25 charges, and the vast bulk of the charge (and all successive $15 or $25 charges per toll)  are a means to charge more for customers' rentals without including this price increase in customers' rental rates. This allows Dollar to represent to customers that Dollar's rental rates are less than Dollar is actually advertising and charging.

4.      From 2008, to sometime before November 2011, Dollar charged its ETC customers a per toll "administrative fee" of $25. By November 2011, Dollar reduced the fee

2

from $25 per toll to $15 per toll and capped the amount of the "administrative fees" at $105. So for instance, if a Dollar customer traveled on the Oklahoma Turnpike and incurred three $2 tolls on the way to and from this renter's destination, this renter's total charge would be $68—$8 for the tolls and $60 in administrative fees. Had this same situation occurred prior to November 2011,  this renter's total charge would have been $108, with $100 in "administrative fees."

## THE ELECTRONIC-TOLL-COLLECTION INDUSTRY

5.      ETC began in 1993, with the implementation of E-ZPass issued by New York State, which allowed motorists to bypass cash-toll lanes with a transponder and a registered account to debit the toll. ETC lanes improve speed and efficiency of traffic flow, save time, reduce congestion and pollution, and increase fuel economy. ETC also results in reduced accident rates and improved safety because slow-and-go-traffic is reduced.

6.      As a result of these benefits, in 1996, the U.S. Department of Transportation sought to implement ETC systems in the 75 largest metropolitan areas within 10 years. And according to the USDOT, as of 2004 62 of the United States' metropolitan areas had met this goal.   By 2006, private companies had not surprisingly become interested in providing ETC services, and by 2007, ETC was viewed as the preferred method for toll collection.

7.      Rent A Toll, Ltd. ("RTL") is a private company that provides ETC services. Beginning in or before 2008, Dollar became RTL's major national rental-car-company customer. RTL provided Dollar its ETC program called Pass24. Pass24 was a program where for between $8.00 and $21.00/day (depending on the market), Dollar would pay for any ETC tolls incurred by customers. If customers did not choose Pass24 (and they did not

have their own transponder), Dollar charged customers who traveled on ETC roads $25 per toll in addition to the toll charges, describing this additional cost in its standardized rental contracts as an "administrative fee."

8.    In or about November 2012, Hertz Global Holdings, Inc., the parent company of Hertz Rent a Car, acquired Dollar. Although Dollar operates as a separate entity from Hertz, sometime after that acquisition, Dollar switched its ETC contractor from RTL to American Traffic Solutions, Inc. ("ATS"), the company that administers Hertz' ETC program.   The misconduct that Plaintiffs allege in this Complaint remained the same throughout the time that Dollar contracted with RTL for its Pass24 service and with ATS for its PlatePassT service.

9.    Thousands of people have been victims of Dollar's increased rental costs that Dollar falsely describes as "administrative fees." Accordingly, Plaintiffs bring this action for breach of contract, violation of state consumer-protection law, and unjust enrichment in order to recover Plaintiffs' and class members' damages and for injunctive relief.

## JURISDICTION AND VENUE

10.    This Court has subject-matter jurisdiction under 28 U.S.C. §1332(d). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action where Plaintiffs and class members are citizens of states different from Dollar.

11.    Venue is proper in this District under 28 U.S.C. §1391 because Dollar does business here and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in or emanated from here. Dollar's principal place of business is also located in this District.

415365.1

12.     Additionally, the documents creating Dollar's uniform rental contract require customers to bring disputes in this Court and requires that Oklahoma law applies to the resolution regardless of choice-of-law issues:

> The laws of the State of Oklahoma shall govern this Agreement, without regard to the conflict of law principles thereof. All disputes shall be conducted in a federal or state court sitting in Tulsa, Oklahoma. The parties acknowledge and agree that jurisdiction and venue is [*sic*] proper in such court(s) and [are] convenient and waive any objection to such jurisdiction and venue, including, without limitation, that such forum is inconvenient.

## PARTIES

13.     Plaintiffs, Stephen Sallee and Anne Sallee, are citizens of Florida. While traveling to Texas, they rented a car from Dollar.  Dollar charged them false and inflated "administrative fees" during their rental, as set out below.

14.     Defendant Dollar Thrifty Automotive Group, Inc. (d/b/a/ Dollar Rent A Car) is a corporation organized and existing under Delaware law, with its principal place of business in Tulsa, Oklahoma. Dollar Thrifty is wholly owned by Hertz Global Holdings. Inc. At all relevant times, Dollar Thrifty rented (and continues to rent) cars to the public through its website, www.dollar.com and other means.

15.     Defendant Dollar Rent A Car, Inc. is a wholly owned subsidiary of Dollar Thrifty Automotive Group, Inc., is organized and exists under Oklahoma law, and has its principal place of business in Tulsa, Oklahoma. At all relevant times, Dollar Rent A Car rented (and continues to rent) cars to the public through its website, www.dollar.com and other means.

16.     Defendant DTG Operations, Inc. is a wholly owned subsidiary of Dollar Thrifty Automotive Group, Inc., is organized and exists under Oklahoma law, and has its

5

principal place of business in Tulsa, Oklahoma. At all relevant times, DTG rented (and continues to rent) cars to the public through its website, www.dollar.com and other means.

## BACKGROUND

17.     In the mid-1990s, ETC came to the forefront in toll collection with New York's adoption of the E-ZPass transponder system. E-ZPass allowed customers who had setup an account, usually by registering a credit-card and a license-plate number, to obtain a transponder that would signal a receiver when their vehicle passed through a toll lane, and the toll amount would be debited from the account. The toll would be collected without the need to slow down and physically exchange cash, and traffic congestion would be reduced.

18.     According to a 2007 study entitled "Toll Collection Technology and Best Practices," conducted by the Center For Transportation Research ( "ETC Study"), ETC is the preferred mechanism for toll collection. ETC lanes improve traffic flow, save driver's time, reduce congestion and pollution, and improve fuel economy. In addition, because fewer people are needed to operate an ETC system, overall costs per transaction are substantially less. For example, the Oklahoma Turnpike, one of the first U.S. highways to use high-speed toll plazas, has seen a 90 percent reduction in collection costs on ETC lanes.

19.     Given its overall benefits, ETC continues to expand. Many toll roads, bridges, and tunnels include ETC lanes. And with the advancement of ETC technology, many roadways have eliminated cash tolls altogether and now use ETC as their exclusive toll-collection method. According to the ETC Study, the ETC market is expected to experience double-digit growth from 2006-2016.

415365.1

20.     With ETC's proliferation, it is not surprising that private firms have become interested in the ETC business. In 2006, three companies, Highway Toll Administration, American Traffic Solutions, and Rent A Toll, Ltd., were all reportedly developing strategies to capitalize on the ETC.

Dollar's e-toll service electronically identifies Dollar vehicles as they travel through ETC sites. This is accomplished by various means depending on the vehicle's location. Some transactions are captured and processed by recognizing license-plate numbers while others are captured through an electronic transponder device in the vehicle.

21.     Once the identification is made, the e-toll service receives data identifying the Dollar vehicle and the tolls incurred on specific dates. Dollar provided the company with whom it partnered to equip rental cars with ETC transponders (first, RTL, and, since Dollar's acquisition by Hertz, ATS) with its customers' personal identification and payment information, including their credit-card and debit-card information and the vehicles they rented.

22.     In 2006, RTL launched its tolling services and expanded its services by over 25% annual growth per year. RTL promotes the use of its services as a revenue generator for its corporate clients, noting on its website under FAQ's that, "Rent A Toll electronic toll payment solutions provide many benefits for fleet managers, car rental companies and toll authorities, including: [g]eneration of incremental revenues."  Starting in or before 2008, Dollar was RTL's major national rental-car-company customer. Dollar partnered with RTL to equip rental cars with ETC transponders and provide ETC services[1].

---

[1] Dollar offers a an opt-in toll payment service whereby Dollar would pay a renter's tolls, but charged the renter a flat daily fee of between $8.00-$21.00/day (depending on the market) for the

415365.1

23.     The following map depicts the states where RTL currently offers ETC services (and Plaintiffs believe that Dollar's ETC service area was the same or substantially the same during the period that RTL was Dollar's ETC provider):



entire rental period, regardless of use. Thus, if a customer rented a Dollar car for 10 days but only traveled on an ETC road once, the overall cost of Dollar's service (first, Pass24 and now PlatePass) was an additional $80.00 or $210.00 to the rental contract.

415365.1

24.     After Hertz's acquisition, Dollar changed its ETC service provider from RTL to ATS. Plaintiffs believe that Dollar's ETC is now applied to the following service area:



25.     Although Dollar's ETC vendor changed from RTL to ATS, Dollar's contract terms have not changed. Thus, regardless of Dollar's ETC vendor, at all times during which Dollar offered ETC service, Dollar misrepresented to its renters that its $15 or $25/toll was an "administrative fee" for processing e-tolls In fact, only a small fraction of these charges was for administering Dollar's e-toll program; the rest is simply a hidden additional cost to customers' rental fees.

415365.1

## IMPOSITION OF MISREPRESENTED AND EXCESSIVE
## ADMINISTRATIVE CHARGES ON PLAINTIFFS AND THE CLASS

26.     Dollar has over 570 rental locations in 61 countries, including approximately 260 locations in the U.S. and Canada. According to Hertz's 2012 10-K, Dollar has used, and continues to use, the Internet as its primary source of reservations.

27.     Dollar's centralized information systems are located in Tulsa, Oklahoma, which systems connect to the rental locations that Dollar serves nationwide.

28.     Like all rental-car companies, Dollar competes for business primarily based on price:

> The markets in which we operate are highly competitive. We believe that price is one of the primary competitive factors in the car and equipment rental markets and that the Internet has enabled cost-conscious customers, including business travelers, to more easily compare rates available from rental companies. If we try to increase our pricing, our competitors, some of whom may have greater resources and better access to capital than us, may seek to compete aggressively on the basis of pricing.

> Hertz 2012 10-K at 45.

30.     29.   Thus, Dollar, like other rental-car companies, seeks to maximize its profits while keeping its rates low enough to compete effectively with other rental-car companies. Indeed, the front page of Dollar Rent a Care's website proclaims that it is "Home of Our Lowest Rates: Guaranteed!" One means of maintaining the "lowest rates" is to hide increases in the rental rate in other charges. Dollar car-rental customers execute standardized rental contracts, which set out the terms, charges and conditions of the rental arrangement. Whether the rental is accomplished through its website or by other means, Dollar explains that if renters "choose not to select the PlatePassT pre-paid tolling option and travel on one of these all-electronic toll roads, and do not have [their] own tolling device in the vehicle, the applicable toll will be paid for [them] and an administrative fee of $15.00

10

[formerly $25] per occurrence with a maximum of $105.00 will be charged."

31.      Dollar's representation that the charge of $15 or $25 per toll is an "administrative fee" is materially false and misleading and in breach of Dollar's contracts with renters. In truth, Dollar's administration of its ETC program was only a fraction of the amounts Dollar represented as "administrative fees." Instead, most of the money that Dollar collected from customers as supposed "administrative fees" was simply increased rental income, which allowed Dollar to keep its rental rates lower than it would have, had Dollar truthfully represented what its $15/25 cost per toll really was.

32.      By representing that its $15 or $25 per toll charge was an "administrative fee" relating to its collaboration with RTL or ATS, when the administrative cost of these toll programs is not nearly that high, Dollar breached its contracts with its customers by charging more for customers' rentals without including or otherwise disclosing its rental-price increase to them.

## FACTS RELATING TO PLAINTIFFS

33.      Sometime before November 26, 2013, Plaintiffs reserved a rental vehicle from Dollar for pick up at Dollar's Dallas/Fort Worth Airport ("DFW")location. Stephen Sallee reserved the rental using his MasterCard credit card.

34.      On November 26, 2013, Plaintiffs traveled from Florida to DFW. Before leaving the airport, Plaintiffs visited the Dollar office to pick up the vehicle they had previously reserved. At the office they were presented with a standard Dollar rental agreement for their signature, which Stephen Sallee signed and thereafter picked up the rental car.

11

415365.1

35.     Plaintiffs took the North Texas Highway to attend a family funeral service. On the way, Plaintiffs incurred two tolls. On their return trip, they incurred these same two tolls.

**36.**     On November 29, 2013, Plaintiffs returned the rental car to Dollar's DFW location. At that time, Dollar's agent advised Plaintiffs that were no additional charges. After returning home, Plaintiffs received a notice from Dollar Processing Center entitled "Dollar Rent A Car Toll Charge Notice." The notice indicated that on November 26, 2013, Plaintiffs' rental car incurred a toll charge of $.94 at approximately 11:32 a.m. and a second charge at approximately 11:37 a.m., totaling $1.41. The Notice also explained that on November 29, 2013, Plaintiffs' rental car incurred a charge of $1.41 at approximately 10:51 a.m. and a second charge of $.94, at approximately 10:55 a.m. for a total toll charge of $4.70. Finally, the Notice instructed that each toll charge was subject to an "administrative fee" of $15.00 for "Total Administrative Fees" of $60.00. Thus, for four tolls totaling only $4.70, Plaintiffs owed Dollar $64.70.  Plaintiffs paid the charges via their credit card.

## PLAINTIFFS AND THE CLASS WERE DAMAGED BY DOLLAR'S MATERIAL MISREPREESNTATIONS

37.     In its rental contracts, Dollar has misrepresented material facts regarding its rental charges, by misrepresenting additional charges to the rental cost and mischaracterizing them as "administrative fees."  Dollar is, and was, in a superior position to know such facts and information, and such information is within Dollar's exclusive knowledge and unknown to Plaintiffs and the Class. Without the foregoing information, consumers cannot determine just what costs and obligations they will incur to rent vehicles from Dollar.

415365.1

38.     Dollar has misrepresented additional rental costs as "administrative fees," which has misled and caused damage to consumers, including Plaintiffs and the Class in that, among other things, it has:

a.     Deprived Dollar customers of material facts and information, which would likely affect their decisions whether to rent vehicles from Dollar or their abilities to make intelligent and meaningful choices between Dollar and other rental car companies; and

b.     Imposed on Plaintiffs and Class Members additional rental charges that were falsely represented and not agreed in their rental agreements.

In addition to breaching its contracts with its customers, Dollar's course of conduct set out above is ongoing and adverse to the public interest and policies underlying consumer protection laws. Unless enjoined and restrained by an order of this Court, Dollar will continue to engage in the unlawful acts and practices set out herein. Such acts and conduct have caused ascertainable loss and actual damage to consumers, including Plaintiffs and the Class, and unless enjoined by the Court, Dollar will continue to cause monetary loss to Plaintiffs, Class Members, and future Dollar rental car customers.

## CLASS-ACTION ALLEGATIONS

39.     Plaintiffs bring this action as a class action according to Federal Rules of Civil Procedure 23(b)(2)and (b)(3) on behalf of themselves and all Dollar customers who rented Dollar vehicles and who paid Dollar's $15 or $25/toll fee. Excluded from Plaintiffs' class are (a) Dollar and any entity in which Dollar has a controlling interest; (b) Dollar's employees, officers, directors, agents, and representatives and their family members; (c) class counsel, employees of class counsels' firms, and class counsels' immediate family

415365.1

members; and (d) the presiding judge and magistrate judge and any of their immediate family members.

40.     Plaintiffs also bring this action on behalf of themselves and all Dollar customers residing in Florida who rented Dollar vehicles and who paid Dollar's $15 or $25/toll "administrative fee." Excluded from Plaintiffs' Florida class are (a) Dollar and any entity in which Dollar has a controlling interest; (b) Dollar's employees, officers, directors, agents, and representatives and their family members; (c) class counsel, employees of class counsels' firms, and class counsels' immediate family members; and (d) the presiding judge and magistrate judge and any of their immediate family members.

41.     Plaintiffs paid Dollar's $15/toll "administrative fees" in connection with their vehicle rentals; therefore, they are class members.

42.     Plaintiffs can identify all other class members from Dollar's records.  Those records are computerized, and are largely generated by online rentals.  Those records reflect which customers were charged and paid Dollar's "administration fee."  Thus, the classes are ascertainable.

43.     Plaintiffs do not know the exact size of the classes because this information is in Dollar's exclusive control. But based on the nature of the commerce involved, Plaintiffs believe the class members number in the thousands and that class members are dispersed throughout the U.S., including Florida. Therefore, joinder of all class members would be impracticable.

44.     Plaintiffs' claims are typical of other class members' claims because Plaintiffs and class members paid Dollar's $15 or $25/toll "administrative fee."

45.     Common legal or factual questions predominate within the classes,

including but not limited to:

   a.   Whether Dollar's uniform misrepresentation, omission, or misconduct concerning its "administrative fee" breached Dollar's contracts with Plaintiffs and class members;

   b.   Whether Dollar's uniform marketing and misrepresentation of its additional rental costs as an "administrative fee" violated the Oklahoma or Florida consumer-protection laws;

   c.   Whether Dollar was unjustly enriched as the result of its uniform misrepresentation, omission, or misconduct;

   d.   Whether Dollar's conduct injured Plaintiffs and class members;

   e.   Whether as a result of Dollar's wrongdoing, Plaintiffs and class members sustained damages and are entitled to damages and/or restitution and if so, the proper measure and appropriate formula for determining their damages and/or restitution; and

   f.   Whether Dollar owes injunctive relief to Plaintiffs and class members.

46.   Plaintiffs will fairly and adequately represent and protect class members' interests and have no interests that conflict with or are antagonistic to class members' interests. Moreover, Plaintiffs' attorneys are experienced and competent in complex class-action litigation.

47.   Class certification is the superior procedural method for fairly and efficiently adjudicating Plaintiffs' claims because:

   a.   Common questions of law or fact predominate over any individual questions that exist within the classes;

   b.   Each class member's damage claim is too small to make individual litigation an economically viable possibility, and few class members likely have any interest in individually controlling the prosecution of separate actions;

   c.   Class treatment is required for optimal deterrence and compensation and for determining the Court-awarded reasonable legal fees and expenses;

415365.1

    d.      Despite the relatively small size of each class member's claim, the aggregate volume of their claims—coupled with the economies of scale inherent in litigating similar claims on a common basis—will enable class counsel to litigate this case on a cost-effective basis; and

    e.      Plaintiffs anticipate no unusual difficulties in this class action's management in that all legal and factual questions are common to the class.

48.     Class certification is appropriate under Federal Rule 23(b)(2) because Dollar has acted on grounds generally applicable to Plaintiffs and the class members, all of whom are at imminent risk of irreparable harm by Dollar having charged, and continuing to charge, its illegal "administrative fee" and all of whom are entitled, as a result, to a declaration that establishes their rights and Dollar's duties with respect to Dollar's "administrative fee."

**COUNT I**
**Breach of Contract under Oklahoma Law**
**(Applicable to the Nationwide Class)**

49.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth in this Count.

50.     By renting a vehicle from Dollar (i.e., by Plaintiffs accepting Dollar's offer to rent a vehicle for which Plaintiffs paid money and Dollar provided Plaintiffs a vehicle), Plaintiffs contracted with Dollar. This contract comprised Dollar's website content and the documents that Dollar gave Plaintiffs when they picked up their vehicle, all of which were standardized across the U.S.

51.     Plaintiffs' contract contained a specific daily-rental price, listed no add-ons, and described an "administrative fee" associated with Dollar's ETC in the event they did not enroll for Pass24/PlatePassT and incurred toll charges.

16

52.     In fact, the vast bulk of Dollar's charges represented to be "administrative fees" was not for administrative cost but was merely additional hidden rental charges for the vehicle. By misrepresenting the charges, Dollar breached its contract with Plaintiffs, by "administrative fee's" true purpose and by raising Plaintiffs' daily-rental rate.

53.     As a result of Dollar's breach, Plaintiffs paid more to Dollar than they should have paid for their vehicle rental.  In this manner, Dollar's breach of contract proximately caused Plaintiffs' damages.

**COUNT II**
**Violation of the OCPA, 15 Okl. Stat. § 751 *et seq.***
**(Applicable to the Nationwide Class)**

54.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth in this Count.

55.     By misrepresenting the true nature and purpose of its ETC "administrative fees" (i.e., failing to disclose that it was actually an additional rental charge and that Dollar was charging its customers a higher rental than they agreed to, Dollar committed an unlawful practice under 15 Okl. Stat. § 753.

56.     Dollar's unlawful practice occurred in the course of its business operations.

57.     As a result of Dollar's unlawful practice, Plaintiffs paid more to Dollar than they should have paid for their vehicle rental. In this manner, Dollar's unlawful practice and violation of the OCPA proximately caused Plaintiffs' injury in their capacity as consumers.

17

415365.1

## COUNT III
### Unjust Enrichment under Oklahoma Law
### (Applicable to the Nationwide Class)

58.     Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if fully set forth in this Count.

59.     Plaintiffs' payment to Dollar of more than they should have for their vehicle rental, as a result of Dollar's misrepresentation of the rental charges, constituted an enrichment to Dollar that was coupled with a resulting injustice to Plaintiffs.

60.     In this manner, Dollar is not only responsible for having illegally charged Plaintiffs for unlawful additional rental costs disguised as an "administrative fee," but by having done so Dollar received an economic benefit.

61.     Consequently, Plaintiffs seek restitution and disgorgement of all unjustly retained money that Dollar obtained through its unlawful conduct.

## COUNT IV
### Breach of Contract under Florida Law
### (Applicable to the Florida Class)

62.     Plaintiffs repeat and reallege the allegations of paragraphs 1-56 as if fully set forth in this Count.

63.     By then renting a vehicle from Dollar (i.e., by Plaintiffs accepting Dollar's offer to rent a vehicle for which Plaintiffs paid money and Dollar provided Plaintiffs a vehicle), Plaintiffs contracted with Dollar. This contract comprised Dollar's website content and the documents that Dollar gave Plaintiffs when they picked up their vehicle, all of which were standardized across the U.S., including Florida

415365.1

64.     Plaintiffs' contract contained a specific daily-rental price, listed no add-ons, and described an "administrative fee" associated with Dollar's ETC in the event they did not enroll for Pass24 or PlatePassT and incurred toll charges.

65.     In fact, the vast bulk of Dollar's charges represented to be "administrative fees" was not for administrative cost but was merely additional hidden rental charges for the vehicle. By misrepresenting the charges, Dollar breached its contract with Plaintiffs, by "administrative fee's" true purpose and by raising Plaintiffs' daily-rental rate.

66.     As a result of Dollar's breach, Plaintiffs paid more to Dollar than they should have paid for their vehicle rental.   In this manner, Dollar's breach of contract proximately caused Plaintiffs' damages.


**COUNT V**
**Violation of the FDUTPA, Fla. Stat. § 501.201 *et seq.***
**(Applicable to the Florida Class)**

67.     Plaintiffs repeat and reallege the allegations of paragraphs 1-56 as if fully set forth in this Count.

68.     Dollar's vehicle rental to Plaintiffs constituted trade or commerce under Fla. Stat. §501.203(8).

69.     By misrepresenting the true nature and purpose of its ETC "administrative fees" (i.e., failing to disclose that it was actually an additional rental charge and that Dollar committed an unconscionable act or practice and/or deceptive act or unfair practice in the conduct of trade or commerce under Fla. Stat. § 501.204, which unconscionable act or practice and/or deceptive act or unfair practice in the conduct of trade or commerce would likely have deceived a reasonable person under the same circumstances as Plaintiffs.

415365.1

70.      Dollar's deception misled Plaintiffs and misled other reasonable consumers to their detriment.

71.      As a result of Dollar's unconscionable act or practice and/or deceptive act or unfair practice in the conduct of trade or commerce, which unconscionable act or practice and/or deceptive act or unfair practice in the conduct of trade or commerce was substantial; was not outweighed by any countervailing benefits to consumers; and injured Plaintiffs and consumers in a manner that could not reasonably have been avoided, Plaintiffs paid more to Dollar than they should have paid for their vehicle rental. In this manner, Dollar's unconscionable act or practice and/or deceptive act or unfair practice proximately caused actual damages to Plaintiffs.

## COUNT VI
### Unjust Enrichment under Florida Law
### (Applicable to the Florida Class)

72.      Plaintiffs repeat and reallege the allegations of paragraphs 1-56 as if fully set forth in this Count.

73.      As a result of Dollar's misrepresentations, by paying to Dollar more than they should have paid for their vehicle rental, Plaintiffs conferred a benefit on Dollar.

74.      By charging Plaintiffs this increased rental cost as an "administrative fee" and by keeping it, Dollar appreciated this conferred benefit.

75.      In this manner, Dollar accepted and retained Plaintiffs' benefit under circumstances that make it inequitable for Dollar to retain this benefit without paying its value to Plaintiffs.

76.      Consequently, Plaintiffs seek restitution and disgorgement of all unjustly retained money that Dollar obtained through its unlawful conduct.

415365.1

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the alternative classes, request the following relief:

A.   An order certifying this action as a class action, appointing Plaintiffs as representatives of the Nationwide class, or, alternatively as representatives of the Florida class, and appointing their attorneys as class counsel;

B.   Under Count I, an order awarding damages related to Dollar's breach of contract;

C.   Under Count II, an order awarding all damages, expenses, and attorneys' fees under 15 Okl. Stat. § 761.1(A), as well as declaratory relief under 15 Okl. Stat. § 761.1(A) and (B) and injunctive relief under 15 Okl. Stat. § 761.1(C);

D.   Under Count III, an order establishing a constructive trust and disgorging Dollar of its illegal profits or requiring Dollar to pay restitution into the constructive trust based on its unjust enrichment;

E.   Under Count IV, an order awarding damages related to Dollar's breach of contract;

F.   Under Count V, an order awarding all damages, attorneys' fees, and costs under Fla. Stat. § 501.2105 and Fla. Stat. § 501.211, as well as declaratory and injunctive relief under Fla. Stat. § 501.211;

G.   Under Count VI, an order establishing a constructive trust and disgorging Dollar of its illegal profits or requiring Dollar to pay restitution into the constructive trust based on its unjust enrichment; and

H.   Any other relief that the Court deems appropriate and just under the circumstances.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury.

415365.1

Dated: May 16, 2014                    Respectfully submitted,

_s/Tony M. Graham_____
Tony M. Graham
OK, 3524
R. Jack Freeman
OK, 3128
**GRAHAM & FREEMAN, PLLC**
6226 E. 101st Street, Suite 300
Tulsa, OK 74137
Tel: (918) 298-1716
Fax: (918) 298-1728
E-mail: tgraham@grahamfreeman.com

Jeffrey W. Lawrence
**LAWRENCE LAW FIRM**
101 California Street, Suite 2710
San Francisco, CA 94104
Tel: (415) 504-1601
Fax: (415) 504-1605
E-mail: jeffreyl@jlawerncelaw.com

Bruce D. Greenberg
Jeffrey A. Shooman
**LITE DEPALMA GREENBERG, LLC**
Two Gateway Center, Suite 1201
Newark, NJ 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
E-mail: bgreenberg@litedepalma.com
jshooman@litedepalma.com

Daniel R. Karon
Laura K. Mummert
**GOLDMAN SCARLATO KARON**
  **& PENNY, P.C.**
700 W. St. Clair Ave., Suite 200
Cleveland, OH 44113
Tel: (216) 622-1851
Fax: (216) 241-8175
E-mail: karon@gskplaw.com
mummert@gskplaw.com

*Attorneys for Plaintiffs and the Class*

22

415365.1