# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEPHEN SALLEE, and ) <br> ANNE SALLEE, individually ) <br> and on behalf of all others ) <br> similarly situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> DOLLAR THRIFTY ) <br> AUTOMATIVE GROUP, INC. ) <br> (d/b/a/ DOLLAR RENT A CAR), ) <br> DOLLAR RENT A CAR, INC., and ) <br> DTG OPERATIONS, INC., ) <br> ) <br> Defendants. ) | Case No. 14-CV-250-GKF-PJC |

## OPINION AND ORDER

Before the court is the motion to dismiss of defendants Dollar Thrifty Automotive Group Inc. ("Dollar"), Dollar Rent a Car Inc., and DTG Operations Inc. [Dkt. #32]. For the following reasons, the motion to dismiss is granted.

### I.  BACKGROUND

Plaintiffs Stephen and Anne Sallee, a married couple, are residents of Florida. [Dkt. #30, p. 17]. They allege that, on November 13, 2013, they reserved a rental car from Dollar through a third-party website. [*Id.*]. As part of the reservation process, plaintiffs were transferred to Dollar's website for confirmation of the reservation. Dollar's website contained a link to Dollar's "Terms and Conditions." [*Id.*, p. 18]. The terms and conditions contained a website disclaimer which provided the terms governing use of Dollar's website. [*Id.*; Dkt. #33-2, pp. 2-3]. The website disclaimer contained both choice of law and forum selection provisions stating

the "laws of the State of Oklahoma shall govern this Agreement" and "[a]ll disputes shall be conducted in a federal or state court sitting in Tulsa, Oklahoma." [Dkt. #33-2, p. 3].

On November 26, 2013, plaintiffs arrived at the Dallas-Fort Worth airport ("DFW") and went to the Dollar counter to pick up their rental. [Dkt. #30, p. 18]. Dollar presented plaintiffs with a rental agreement which Stephen Sallee signed.[1] [*Id.*]. Among other topics, the rental agreement discussed the renter's use of the car on toll roads that do not have booths for cash payment. Renters may opt in to Dollar's pre-paid tolling service ("toll by-pass option"). [Dkt. 33-1, p. 2]. If the toll by-pass option is not purchased, the rental agreement imposes an administrative fee of $15 ("toll fee provision") per occurrence in addition to any toll charges the renter incurs. [Dkt. #33-1, pp. 2, 4 ("You are liable for payment of all traffic and vehicle violations . . . All toll fines (including the use of all cashless toll roads without purchase of the toll by-ass option) are subject to an admin fee of $15 per violation/occurrence.") ("You agree to pay us for all charges under this Agreement, including . . . a $15 administrative fee per toll citation . . . .").][2] Plaintiffs did not purchase the toll by-pass option. While using the rental car, plaintiffs took the North Texas Highway, a toll road, incurring four tolls totaling $4.70 in charges the plaintiffs did not pay, and returned the rental car to Dollar's DFW counter on November 29, 2013. [Dkt. #30, p. 18].

On or about December 19, 2013, Dollar sent plaintiffs a notice informing them Dollar was assessing a $15 fee for each of the four toll violations, resulting in a total obligation of $64.70. [*Id.*, p. 19]. The notice included this explanation: "Per your rental agreement, an

---

[1] The rental agreement at issue in this case was signed by Stephen Sallee only. [Dkt. #30, p. 18; Dkt. #33-1, pp. 2-5]. Defendants claim Anne Sallee lacks standing to sue on the contract. [Dkt. #33, p. 26]. Because the court concludes plaintiffs have failed to state a claim upon which relief may be granted, the court need not address whether Anne Sallee has standing in this lawsuit.

[2] As discussed in section III(A) below, these materials are referenced in the First Amended Complaint and are central to the plaintiffs' claims. Thus, the court may consider them without converting the motion to dismiss into a motion for summary judgment.

administration fee was charged to cover the costs of processing your citation on behalf of the Rental Car Company." [*Id.*]. Plaintiffs contacted Dollar to dispute the charges. [*Id.*]. Dollar's response "referred them to their rental agreement." [*Id.*]. Plaintiffs subsequently paid the charges. [*Id.*, p. 20].

Plaintiffs' First Amended Complaint asserts a class action raising four causes of action under Oklahoma law applicable to the nationwide class and four causes of action under Florida law applicable to the Florida class. [*Id.*]. Stephen and Anne Sallee are the only named plaintiffs. The nationwide claims are for 1) breach of contract; 2) violation of the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, § 751 *et seq.*; 3) unjust enrichment; and 4) breach of the implied covenant of good faith and fair dealing. [*Id.*, pp. 23-25, 28-29]. Applicable to the Florida class are claims for 1) breach of contract; 2) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201; 3) unjust enrichment; and 4) breach of the implied covenant of good faith and fair dealing. [*Id.*, pp. 26-28, 29].

Defendants filed their motion to dismiss [Dkt. #32] with a separate brief in support of their motion [Dkt. #33] on September 2, 2014.

## II.     STANDARD OF REVIEW

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief can be granted. A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to make out the claim. *Id.* at 556. "[A] plaintiff's obligation to provide the grounds of his entitlement to

3

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quotations omitted). The court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).

### III. DISCUSSION

#### A. *Consideration of Contracts*

Defendants include the website disclaimer and the rental agreement in their motion to dismiss. [Dkt. ##33-1, 33-2]. Courts may consider documents attached to a motion to dismiss without converting the motion into one for summary judgment when the documents are "referred to in the complaint and [are] central to the plaintiff's claim." *Borde v. Bd. of Cnty. Comm'rs of Luna Cnty.*, 514 F. App'x 795, 799 (10th Cir. 2013) (unpublished) (quoting *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)). Plaintiffs refer to each document in both the First Amended Complaint and in the response to defendants' motion to dismiss. [Dkt. #30, pp. 18, 24, 26; Dkt. #38, pp.6-7]. Both documents are central to plaintiffs' claims because plaintiffs' claims arise from language in the rental agreement and they are determinative as to which state's law this court must apply. Therefore, the court will consider both documents for purposes of the motion to dismiss.

#### B. *Choice of Law*

A court sitting in diversity must apply the forum state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). Oklahoma law provides that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is

4

made." Okla. Stat. tit. 15, § 162. However, Oklahoma law allows parties to a contract to select which state's laws governs their agreement. *See Harvell v. Goodyear Tire & Rubber Co.*, 164 P.3d 1028, 1033-34 (Okla. 2006).

The parties disagree as to which state's law the court should use to interpret the toll fee provision in the rental agreement, which is the provision that gives rise to plaintiffs' claims. Plaintiffs argue the court should apply Oklahoma law pursuant to the choice of law provision contained in Dollar's website disclaimer. [Dkt. #30, pp. 18, 24]. Defendants counter that the choice of law provision in the website disclaimer is inapplicable to the toll fee provision in the rental agreement and therefore Texas law applies because plaintiffs signed and performed the rental agreement in Texas. [Dkt. #33, p. 13]. The parties do not dispute the validity of the rental agreement, nor do they dispute the validity of the website disclaimer and choice of law provision contained therein.

Thus, the court must decide two separate, but interrelated choice of law questions. First, the court must decide what state's law guides the interpretation of the website disclaimer, and specifically whether, under that state's law, the disclaimer's choice of law provision applies to the separate rental agreement. Second, the court must decide what state's law governs the rental agreement, including the toll fee provision that gives rise to plaintiffs' claims. Obviously if, at the first step, the court concludes the choice of law provision in the website disclaimer applies to the rental agreement, the second question, although analytically distinct, will have been resolved.

For each of these two inquiries, the court concludes Oklahoma law applies, albeit for different reasons. First, the choice of law provision in the website disclaimer states "[t]he laws of the State of Oklahoma shall govern this Agreement, without regard to the conflict of law principles thereof." [Dkt. #33-2, p. 3]. Thus, because the parties so agreed, Oklahoma law

5

governs the interpretation of the website disclaimer and, specifically, whether the choice of law provision therein applies to the rental agreement.

The website disclaimer's choice of law provision can only apply to the rental agreement if the two documents constitute a single agreement. Under Oklahoma law, in certain cases, "separate documents executed as part of the same transaction may be read together as a single agreement." *Sunrizon Homes, Inc. v. Am. Guar. Inv. Corp.* 782 P.2d 103, 107 (Okla. 1988). To determine whether multiple documents should be construed as one, the court looks to the language of the contract to ascertain whether the parties intended the documents to be considered as one agreement. *See id.* at 107-08 ("[t]he cardinal rule in contract interpretation is to determine and to give effect to the contractual intent of the parties."). Where there is no language in the documents tying them together, courts are reluctant to infer such an intent by the parties. *See Yarger v. ING Bank, FSB*, 2012 WL 3776012 (D. Del. Aug. 31, 2012) (declining to apply a choice of law provision contained on ING's website where the website provision was limited to use of the website and no plaintiff or proposed class member made a purchase via the website); *see also Nikolin v. Samsung Elec. America, Inc.*, 2010 WL 4116997, at *4 n.3 (D.N.J. Oct. 18, 2010) (unpublished) (rejecting plaintiff's argument that an online choice of law provision should govern when plaintiff did not allege that defendant violated the terms of the website or that the claims arose under the website's terms).

Plaintiffs rely heavily on *Sunrizon*. [Dkt. #38, p. 10]. In *Sunrizon*, the court considered an installment sales contract and a security agreement to be a single agreement pursuant to an express clause in the contract that stated the two documents "shall be considered as *one document*." 782 P.2d at 108. However, the court concluded a *subsequent* assignment of one party's rights and interest in the contract to a third party should not be considered together with

6

the rest of the contract documents because the contract did not mention the subsequent assignment, and the assignment's language manifested an intent to be considered as separate. *Id.* Plaintiffs also rely on *Moretti v. The Hertz Corp.*, No. 13-02972, 2014 U.S. LEXIS 50660 (N.D. Cal. Apr. 11, 2013). In that case the court applied a choice of law provision contained on the website's terms of use section to claims arising out of the subsequent rental agreement. *Id.* There the website agreement explicitly applied to subsequent rental transactions: "To the extent that you *book* any travel products or services on this Site . . . you agree that these Terms and Conditions shall apply to all such transactions." *Id.* (emphasis added).

After examining both the rental agreement and website disclaimer in this case, the court finds nothing manifesting an intent that the documents be considered as one agreement. In fact, the language of the documents contemplates separate consideration. By its own terms, the website disclaimer applies only to "access to and use of the Site," and further states, "[t]his Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof . . . ." [Dkt. #33-2]. The website disclaimer does not state it applies to subsequent booking or rentals. [*Id.*]. In the absence of language or facts suggesting the parties intended the rental agreement and website disclaimer to be one contract, the court concludes that the agreements are separate, and therefore, that the choice of law provision contained in the website disclaimer is inapplicable to the rental agreement.

Because the website disclaimer's choice of law provision does not apply to the rental agreement, the court must separately determine which state's law governs the interpretation of the rental agreement. Oklahoma law again guides this choice of law inquiry, in this instance because it is the law of the forum state. *See Klaxon*, 313 U.S. 487. Under Oklahoma law, "[a] contract is to be interpreted according to the law and usage of the place where it is to be

performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." 15 Okla. Stat. § 162. The rental agreement is not limited to a particular place of performance, although, according to plaintiffs' allegations, the agreement was, in fact, performed in Texas. [Dkt. #30, at 18 ("[p]laintiffs took the North Texas Highway . . . [and] returned the rental car to Dollar's DFW location.")]. The agreement was made in Texas, as the parties executed the rental agreement at Dollar's counter at DFW. [*Id.*]. The court concludes Texas law applies to plaintiffs' claims for breach of contract.

In sum, the parties agreed that Oklahoma law would govern the interpretation of the website disclaimer, and Oklahoma law prevents the application of the disclaimer's choice of law provision to the separate rental agreement. Because Oklahoma is the forum state, the court used Oklahoma's choice of law rules to determine that the rental agreement, and plaintiffs' claims arising therefrom, are governed in substance by Texas law.

The parties have not briefed the issue of what law governs plaintiffs' claims for breach of an implied covenant of good faith and fair dealing. "The local law of the forum determines such questions as . . . whether the action shall be in tort or contract . . . ." Restatement (Second) Conflict of Laws § 124 cmt. a (1969). In some states, a claim for breach of the covenant of good faith and fair dealing sounds in tort. Under Oklahoma law, every contract contains an implied duty of good faith and fair dealing. *Wathor v. Mutual Assur. Adm'rs, Inc.*, 87 P.3d 559, 561 (Okla. 2004). Absent a special relationship[3] between the parties, a breach of the duty of good faith and fair dealing "merely results in damages for breach of contract, not independent tort liability." *Id*. Thus, under the law of the forum, plaintiffs' claims for breach of the implied covenant of good faith and fair dealing sound in contract. As discussed above, Oklahoma's

---

[3] No special relationship exists here, and plaintiffs do not allege one. *See infra*, section III(E).

8

contract choice of law rules direct the court to apply Texas's substantive law to plaintiffs' contract claims.

Texas law also applies to plaintiffs' claims for unjust enrichment. "In an unjust enrichment action, Oklahoma looks to the law of the state where the services were rendered." *I.P.I.C., GSP, S.L., v. Ruhrpumpen, Inc.*, 2009 WL 5101761, *4 (N.D. Okla. Dec. 17, 2009) (unpublished) (citing *Harvell v. Goodyear Tire and Rubber Co.*, 164 P.3d 1028, 1033-34 (Okla. 2006)). As noted above, Dollar's services—the provision of a rental car and its use—were rendered in Texas.

Accordingly, the court will now assess the sufficiency of plaintiffs' claims for breach of contract, unjust enrichment, and breach of an implied covenant of good faith and fair dealing under Texas law.

C.     *Breach of Contract*

Plaintiffs claim Dollar "breached its contract with Plaintiffs by misrepresenting its administrative fee's true purpose and by raising Plaintiffs' daily rental rate."[4] [Dkt. #30, p. 24]. Defendants move to dismiss this claim, arguing the fee was fully disclosed in the rental agreement and charged to plaintiffs in accordance with its express terms. [Dkt. #33, pp. 15-16].

Texas law acknowledges four elements of a breach of contract claim: "(1) the existence of a valid contract between the plaintiff and defendant, (2) the plaintiff performed his obligation under the contract, (3) the defendant breached the contract, and (4) the plaintiff was damaged as a result of the breach." *James M. Clifton, Inc. v. Premillenium, Ltd.*, 229 S.W.3d 857, 859 (Tex.

---

[4] In the First Amended Complaint, plaintiffs argue Dollar's $15 fee is excessive compared to the fees charged by competitors. In support, plaintiffs insert a chart juxtaposing Dollar's $15 administrative fee with competitor fees of either $3.95 or $4.95. [Dkt. #30, p.15]. In the chart, plaintiffs compare apples to oranges. The other competitor charges referenced in plaintiffs' chart are not administrative fees, but rather per-day rates similar to Dollar's toll bypass option. Furthermore, although the court does not base its decision herein on information obtained from the website plaintiffs cite as the source for the information in the chart (http://www.sunpass.com/rentalcar), the court notes the website includes two other companies, not included in plaintiffs' chart, that charge the same administrative fee as Dollar.

App. 2007). In *Ramon v. Budget Rent-A-Car System, Inc.*, 2007 WL 604795 (D.N.J. Feb. 20, 2007), plaintiffs sued a rental car company for including a refueling fee in the rental agreement signed in Texas that was allegedly grossly disproportionate to the rental car company's costs. Plaintiff had two options under the agreement: 1) opt to pre-purchase a full tank and return the car with any amount of gas, or 2) return the car with a full tank. *Id.* at *3. Failure to exercise either option resulted in a refueling service charge. *Id.* The court noted the plaintiff

> [N]ot only rejected the prepaid fuel option but agreed to the terms of the refueling service charge, an avoidable fee . . . which was clearly identified and explained in the agreement. Ultimately, Plaintiff was charged the precise amount he agreed to under the contract . . . [t]he Court fails to see how this could possibly amount to a breach.

*Id.* at *4.

The rental agreement in this case states "you are liable for payment of all traffic and vehicle violations . . . including the use of all cashless toll roads without purchase of the toll by-pass option." [Dkt. #33-1, p. 2]. Similar language is contained on the third page of the rental agreement. [*Id.*, p. 4]. The toll fee provision is inapplicable if customers either purchase the toll by-pass option or simply avoid cashless toll roads. Plaintiffs in this case rejected the toll by-pass option and agreed to the terms of the toll fee provision which was clearly disclosed and explained in the rental agreement. Plaintiffs recognize they were charged precisely the amount they agreed to under the contract. [Dkt. #30, p. 19].

Even under the facts as alleged by plaintiffs, Dollar fully disclosed and explained the toll fee provision to which plaintiffs voluntarily agreed. Dollar's conduct was strictly compliant with the terms of the contract, and there was no breach. The court accordingly dismisses plaintiffs' claims for breach of contract.

10

D. *Unjust Enrichment*

Plaintiffs claim Dollar unjustly enriched itself by misrepresenting the nature of the toll fee. [Dkt. #30, p. 25]. The doctrine of unjust enrichment is a form of quasi-contract damages that applies principles of restitution to disputes not governed by a valid contract. *Lone Star Steel Co. v. Scott*, 759 S.W.2d 144, 154 (Tex. App. 1988). Unjust enrichment occurs when one party obtains a benefit through fraud, duress, or the taking of an undue advantage. *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). It can arise where an agreement is "unenforceable, impossible, not fully performed, thwarted by mutual mistake, or void for other legal reasons." *City of Harker Heights, Tex. v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 319 (Tex. App. 1992). However, under Texas law, remedies such as unjust enrichment that are based on quasi-contract or a contract implied in law are unavailable when a valid, express contract governs the subject matter of the dispute. *See Burlington N.R.R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App. 1996) *aff'd*, 996 S.W.2d 467 (Tex. 1998) (holding the disputed rate charges were "fully governed by the terms of the contracts" because the contracts established the rates).

Plaintiffs do not dispute that a valid contract governs the subject matter of their claims. Nor do plaintiffs dispute that the toll fee provision is expressly stated in the rental agreement. [Dkt. #33-1, pp. 2, 4]. Because a valid contract establishes the fee of which plaintiffs complain, an unjust enrichment claim cannot stand as a matter of law. Accordingly, the court grants defendants' motion to dismiss plaintiffs' unjust enrichment claims.

E. *Implied Covenant of Good Faith and Fair Dealing*

Plaintiffs claim Dollar violated an implied covenant of good faith and fair dealing by breaching the contract and misrepresenting the true purpose of the toll fee. [Dkt. #30, pp. 28-

11

29]. Texas law rejects the notion that an implied covenant of good faith and fair dealing exists in every contractual relationship. Generally no such covenant exists in an ordinary, arms-length commercial transaction. *Cantu v. AT&T Broadband*, 2006 WL 332622, *2 (Tex. App. Feb. 15, 2006); *see also City of Midland v. O'Bryant*, 18 S.W.3d 209, 215 (Tex. 2000). The covenant arises only when parties have a special relationship or have contracted for a special relationship. *Arnold v. Nat'l Cnty Mut. Fire Ins.*, 725 S.W.2d 165, 167 (Tex. 1987). Absent a formal or informal relationship of trust and confidence, no duty exists. *Cantu*, 2006 WL 332622 at *2. The implied duty of good faith and fair dealing has been applied only in limited circumstances including "long-standing relations, an imbalance of bargaining power, and significant trust and confidence shared by the parties." *Caton v. Leach Corp.,* 896 F.2d 939, 948 (5th Cir.1990) (citing *Aranda v. Ins. Co. of North America,* 748 S.W.2d 210, 212–13 (Tex. 1988)).

The rental agreement contains no express provision for a covenant of good faith and fair dealing and plaintiffs fail to allege a special relationship existed. Nonetheless, courts will consider if the factual allegations support a finding that a special relationship existed giving rise to the implied covenant. In *Robinson v. Match.com, L.L.C.*, 2012 WL 3263992, at **16-18 (N.D. Tex. August 10, 2012), a subscriber sued a dating service provider. The subscriber had various claims arising from Match.com's alleged failure to monitor dating profiles, including their failure to remove inactive or false and fraudulent profiles. In a situation where the service provider was privy to the intimate details of the subscriber's romantic life, the Texas federal court nevertheless concluded the subscriber and Match.com had an "ordinary commercial contractual relationship." *Id.* at *18. The court also rejected the argument that the agreement was an adhesion contract of unequal bargaining power, reasoning that a subscriber of dating

services who is unhappy with a particular provider can easily seek out alternative dating services. *Id.*

In this case, plaintiffs do not allege they have a longstanding relationship with Dollar, nor do plaintiffs allege the parties have a relationship involving significant trust or confidence. Dollar merely provides rental services through arms-length transactions with customers. As for bargaining power, plaintiffs do not allege an imbalance, and like the subscribers in *Robinson*, plaintiffs can easily seek out alternative car rental services. The court finds that no special relationship, either express or implied, existed between the parties that gives rise to an implied covenant of good faith and fair dealing under Texas law. Therefore plaintiffs have failed to state a claim upon which relief could be granted, and plaintiffs' claims for breach of the implied covenant of good faith and fair dealing are dismissed.

  F. *OCPA and FDUTPA*

Plaintiffs claim Dollar violated the Oklahoma Consumer Protection Act ("OCPA"), Okla. Stat. tit. 15, § 751 *et seq.*, by misrepresenting the true nature and purpose of the administrative fee. Defendants maintain the OCPA is inapplicable because the transaction did not occur in Oklahoma. [Dkt. #33, pp. 21-23]. Indeed, this court has held that the OCPA does not have extraterritorial effect. *Steinbeck v. Dollar Thrifty Auto. Group, Inc.*, 2008 WL 4279798, at *3 (N.D. Okla. Sept. 15, 2008) ("The Oklahoma Supreme Court has determined that the appropriate inquiry in deciding the applicability of a consumer protection statute is whether the consumer transaction occurred within the state.") (citing *Harvell*, 164 P.3d at 1037 (Okla. 2006)). Thus, the OCPA could not provide the relief plaintiffs seek because the rental transaction took place in Texas, not Oklahoma. As a result, plaintiffs have not stated a claim upon which relief can be

granted under the OCPA. Accordingly, the court grants defendants' motion to dismiss plaintiffs' OCPA claim.

Similarly, plaintiffs claim Dollar violated the Florida Deceptive and Unfair Trade Practice Act ("FDUTPA"), Fla. Stat. § 501.20. [Dkt. #30, p. 27]. Defendants argue the FDUTPA does not have extraterritorial effect. [Dkt. #33, p.22]. Like the OCPA, the FDUTPA does not apply extraterritorially and is therefore inapplicable to a Texas transaction. *See Nieman v. Dryclean U.S.A. Franchise Co., Inc.*, 178 F.3d 1126, 1128 n.3 (11th Cir. 1999) (declining to apply FDUTPA where a franchise agreement was partially signed, and was to be fully performed, in Argentina); *see also Millennium Commc'n & Fulfillment, Inc. v. Office of Attorney Gen., Dept. of Legal Affairs, State of Fla.*, 761 So.2d 1256 (Fla. Dist. Ct. App. 2000) (holding that FDUTPA applies to transactions in Florida even when the parties are not Florida residents); *but compare Barnext Offshore, LTD. v. Ferretti Group USA, Inc.*, 2012 WL 1570057, **5-6 (S.D. Fla. May 2, 2012) (applying FDUTPA to a Florida transaction in which certain documents were signed in the Bahamas) *with Friedman v. Dollar Thrifty Auto. Group, Inc.*, 2013 WL 5448078 at **6-7 (D. Colo. Sept. 27, 2013) (rejecting an argument based on *Barnext* that FDUTPA could apply to transactions that occur entirely outside of Florida). Plaintiffs have failed to state a claim upon which relief could be granted under the FDUTPA. Accordingly, that claim is dismissed.

IV. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss [Dkt. #32] is granted.

ENTERED on this 20th day of March, 2015.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

14